Filed 10/27/25  Cagle v. Rublevich CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JEFFREY CAGLE, | B342923 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24SMCV01890) |
| v. | |
| EVE RUBLEVICH et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, H. Jay Ford III, Judge.  Affirmed.

Krishel Law Firm and Daniel L. Krishel for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

_____

Appellants Eve Rublevich, Eden Rublevich, Michael Rublevich, and Yiffat Rublevich (the Rubleviches) appeal the trial court's denial of their anti-SLAPP motion.[1]  The Rubleviches argue the basis of respondent Jeffrey Cagle's complaint against them was an affidavit Eve filed under Civil Code section 2924m (section 2924m) in connection with her bid on a foreclosed-upon Beverly Hills condominium (the Property), and that—contrary to the trial court's finding—this affidavit constituted an act in furtherance of Eve's right to free speech in connection with a public issue under Code of Civil Procedure section 425.16, subdivisions (e)(2) and (e)(4) (section 425.16(e)(2) and section 425.16(e)(4)).  Finding no error, we affirm.

## BACKGROUND

### A.    *Section 2924m*

"Section 2924m was added to the statutory scheme governing nonjudicial foreclosure sales effective January 1, 2021. (Stats. 2020, ch. 202, § 7.)  The statute 'prescribe[s] an alternative process' for 'a trustee's sale of property under a power of sale contained in a deed of trust or mortgage on real property' that contains one to four residential units.  (Legis. Counsel's Dig., Sen. Bill No. 1079, Stats. 2020 (2019–2020 Reg. Sess.), ch. 202.)  Where . . . a prospective owner-occupant, as defined in section 2924m, is not the last and highest bidder at the trustee's sale, the statute grants other entities, as defined in the statute, 'certain rights and priorities to make bids on the property after the initial trustee sale and potentially to purchase it as the last and highest

[1] Because appellants share a surname, we refer to them by their first name.

2

bidder, subject to certain requirements and timelines.' " (*Bird Rock Home Mortgage, LLC v. Breaking Ground, LP* (2025) 114 Cal.App.5th 492, 500-501 (*Bird Rock*).)

"The way section 2924m works is to delay the finality of a trustee's nonjudicial foreclosure sale to allow specified entities to submit bids equal to or greater than the highest bid made at the sale. A trustee's sale generally is deemed final when the auctioneer accepts the last and highest bid. [Citations.] If the sale is 'under a power of sale contained in a deed of trust or mortgage on real property containing one to four residential units,' however, the sale will be deemed final at the end of the auction only if the last and highest bidder is 'a prospective owner-occupant' (§ 2924m, subd. (c)(1)), i.e., a natural person who intends to occupy the property as a primary residence and meets other requirements (*id.*, subd. (a)(1)). If the last and highest bid at the trustee's sale is not made by a prospective owner-occupant, certain entities may submit bids matching or exceeding the last and highest bid at the sale. In that event, the trustee's sale is not deemed final until the earliest of the following: . . . (3) 45 days after the sale, during which period an eligible bidder may submit a bid that exceeds the last and highest bid at the sale (*id.*, subd. (c)(4))." (*Bird Rock*, *supra*, 114 Cal.App.5th at p. 501.) An "eligible bidder" includes a "prospective owner-occupant." (Civ. Code, § 2924m, subd. (a)(3)(B).) A prospective owner-occupant is "a natural person who presents to the trustee an affidavit or declaration" attesting that, within 60 days of the trustee's deed being recorded, they will occupy the property as their primary residence for at least a year, that they are not acting as anyone's agent in purchasing the property, and that they are neither the mortgagor nor related to the mortgagor. (*Id.* at subd. (a)(1).)

3

## B. *Cagle Files a Complaint*

In April 2024, Cagle filed a complaint against the Rubleviches and "S.B.S. Lien Services." He alleged that, two weeks after a trustee's sale was held for the Property, he submitted to trustee SBS a "Notice of Intent to Bid" and supporting affidavit, "certifying Plaintiff's status as an Eligible Bidder, Prospective Owner-Occupant." Forty-six days after the trustee's sale—the forty-fifth day was a Sunday—Cagle submitted a bid of $752,000.

After the deadline to submit a bid passed, SBS initially informed Cagle he was the highest bidder. Two weeks later, SBS told him there had been a "small miscommunication" and he was not the winning bidder. Eve submitted the winning bid of $755,000, along with a form affidavit in which she checked the box next to several preprinted statements, including: "I will occupy the property as my primary residence within 60 days of the trustee's deed being recorded, and will maintain my occupancy for at least one year" and "I am not acting as the agent of any other person or entity in purchasing the real property."

On June 7, 2023, a Trustee's Deed Upon Sale was recorded in favor of Eve. On the deed, Eve's address was listed as the address of her parents, Michael and Yiffat. Cagle alleged Michael "owns a long list of rental properties in the area, including three more condos . . . that are very similar to the Property."

On June 29, 2023, a Short Form Deed of Trust in favor of the Rublevich Family Trust was recorded to secure a $700,000 loan from the Trust to Eve.

On July 24, 2023, Eve's brother Eden—a "real estate professional" licensed by the California Department of Real

4

Estate—applied for a permit to replace wood floors, retile the bathroom, and install new kitchen cabinets at the Property.[2] Cagle alleged the permit was granted on August 1, 2023, and the final permit inspection was completed by the city on January 4, 2024. Eleven days later, the Property was listed for rent on several rental websites "under Eden's name." "[D]espite Eve certifying under penalty of perjury that she was a prospective owner-occupant, Eve never actually occupied the Property as a primary residence at any time."

Based on these allegations, Cagle brought five causes of action against the Rubleviches: (1) Violation of Civil Code section 2924m; (2) Declaratory Relief; (3) Injunctive Relief (preventing any further transfer or lease of the Property until the case was adjudicated); (4) Quiet Title; and (5) Intentional Interference with Prospective Economic Advantage. In his first cause of action (which allegations were incorporated into his other causes of action), Cagle alleged "Eve was not a qualified bidder but rather a straw-bidder for Michael."

### C. *The Rubleviches Demur and Move to Strike the Complaint*

#### 1. Demurrer

##### (a) The Rubleviches Demur

In July 2024, the Rubleviches demurred to the complaint, arguing there was no private right of action under section 2924m and, in any case, Eve had been forced to file an unlawful detainer

---

[2] Cagle also alleges Eden "has been holding himself out as the owner of the Property."

action against the foreclosed owner, "thereby providing an express, absolute and unconditional statutory defense to the 'occupancy' requirement in Section 2924m."[3]  The Rubleviches concluded that because there was no private right of action for violation of section 2924m, an "[anti-]SLAPP motion is appropriate to dispose of the remaining allegations because all remaining claims are *all based on that same Civil Code Section 2924m* affidavit, and therefore, Plaintiff will likewise not be able to prevail on any of the other causes of action as a matter of law."

### (b)    Cagle Opposes the Demurrer

Cagle contended it was irrelevant whether there was a private right of action under section 2924m because its violation was "merely incidental to Plaintiff's overall claim," which was that "Defendants conspired to perpetrate a fraud in order to avoid competitive bidding at the foreclosure sale."  Specifically, Cagle alleged "Eve was merely a proxy bidder, falsely bidding as an

---

[3] (Civ. Code, § 2924m, subd. (g) ["A prospective owner-occupant shall not be in violation of this section if a legal owner's compliance with the requirements of Section 2924n renders them unable to occupy the property as their primary residence within 60 days of the trustee's deed being recorded"]; *id.* at § 2924n ["Nothing in this article shall relieve a person deemed the legal owner of real property when the trustee's deed is recorded from complying with applicable law regarding the eviction or displacement of tenants . . ."].)

In conjunction with their demurrer and motion to strike, the Rubleviches asked the court to judicially notice pleadings showing an unlawful detainer complaint was filed on June 21, 2023, default judgment was entered on August 25, 2023, a writ of possession was issued on September 19, 2023, and the eviction was scheduled for November 15, 2023.

agent on behalf of her family members" and pointed out that "Eve has never occupied the Property despite having claimed under penalty of perjury that she would do so." Cagle argued there were "both equitable claims (quiet title, declaratory relief) and tort claims (negligence and intentional interference with prospective economic advantage) at issue beyond any statutory violation."[4] He insisted he had pleaded sufficient facts to support his causes of action for quiet title, unfair competition, and intentional interference with prospective economic advantage.

### (c)  The Rubleviches Reply

The Rubleviches countered the court should sustain the demurrer as to all causes of action because they were all "based on that same defective *Civil Code Section* 2924m first cause of action." The Rubleviches pointed out that Cagle did not dispute there was no private right of action under that statute and did not dispute Eve's occupancy requirement was excused by her initiation of the unlawful detainer action.

### 2.  Motion to Strike

### (a)  The Rubleviches Move to Strike

Along with the demurrer, the Rubleviches simultaneously filed a motion to strike under Code of Civil Procedure section 425.16. They argued the foundation of Cagle's complaint was Eve's mandatory and publicly recorded affidavit, which

---

[4] Cagle alleged negligence against "Defendant Trustee Corps and Does 1-20" but not the Rubleviches. The term "Trustee Corps" is undefined in the complaint but presumably refers to trustee SBS.

7

constituted "conduct in furtherance of the exercise of the constitutional right free speech in connection with a public issue/interest, and therefore, the proper subject of this [anti-]SLAPP motion" under section 425.16(e)(4).[5]  Specifically, there was a "strong *public interest/issue* behind the enactment of Section 2924m"—namely, " 'to stem the transfer of residential ownership from owner-occupants to institutional investors, avoiding repeating the pitfalls of the 2007-2010 real estate and housing crisis' "—and the recorded affidavit "is at the core of the entire 2924m statute, and is at the core of the entire complaint, and thus at the core of the 'public issue/interest' contained within Section 2924m and this case."

Addressing the merits of Cagle's complaint, the Rubleviches contended his first cause of action failed because there was no private right of action under section 2924m, and because Eve's unlawful detainer action excused the "occupancy" requirement.[6]  They concluded that "because all remaining claims are *all based on that same Civil Code Section 2924m* affidavit,"

---

[5] (Code Civ. Proc., § 425.16, subd. (e)(4) ["As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest"].)

[6] The Rubleviches also explained Eve did not occupy the Property because the property manager discovered extensive water and mold damage.  Due to a health condition, Eve was "extremely sensitive to her surroundings and living conditions" and ultimately decided she could not live in the Property, although she had intended to when she first bid on it.

8

Cagle "will likewise not be able to prevail on any of the other causes of action as a matter of law."

The Rubleviches supported their motion with declarations from Eve and the property manager who discovered the mold and oversaw its remediation.

### (b) Cagle Opposes the Motion to Strike

Cagle argued his complaint was not based on a matter of public interest, and the Legislature's enactment of a statute addressing foreclosures did not mean "the foreclosure sale for the subject Property and Defendant's bid thereon is a 'public issue.' " Indeed, "[s]uch a standard would effectively turn *any* law that the public is required to follow into a SLAPP issue." Cagle added that even if an activity protected under the anti-SLAPP statute were "implicated," "it is not the primary motivation for the action." Cagle claimed "Eve's affidavit is merely 'evidence of liability' rather than the 'wrong complained of.' "[7] Cagle argued he had made a prima facie case for prevailing under his quiet title and unfair competition causes of action.[8]

### (c) The Rubleviches Reply

The Rubleviches reiterated the points in their moving papers, contending Eve's affidavit *was* the basis of Cagle's

---

[7] (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 ["a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted"].)

[8] Cagle alleged an unfair competition cause of action against "Defendant Trustee Corps and Does 1-20" but not the Rubleviches.

complaint because it was through that affidavit that she purportedly committed fraud.  Further, they pointed out Cagle did not dispute there was no private right of action under section 2924m and failed to address that the unlawful detainer action excused Eve's occupancy requirement.  Nor did Cagle submit any evidence to contradict the declarations of Eve and the property manager.

### (d)  The Parties Submit Supplemental Briefs

On October 10, 2024, the court heard the motion to strike. The court continued the hearing and ordered:  "Parties are to meet and confer regarding the Demurrer, and submit a supplemental brief" within two weeks.  As the court explained in a later minute order:  "At the first hearing on the motion, the Court observed the sole basis of Defendant's [*sic*] motion appeared to be under the 'catch all' subdivision (b)(1). Defendants['] counsel suggested their motion was made under '425.16 . . . subdivision (b)(1)' independently from subdivision (e)(4) but did not identify what other subdivision was raised in the motion.  The Court noted protected speech or conduct under subdivision (b)(1) is defined by subdivision (e)(1) through (e)(4). In that regard, the Court agreed to continue the hearing to permit the parties to simultaneously submit supplemental briefs addressing how defendant's submittal of the affidavit to the foreclosure trustee was done 'in connection with a public issue or an issue of public interest' under subdivision (e)(4)."

### (i)  Cagle's Supplemental Brief

Cagle argued Eve's affidavit was not protected speech because the affidavit "is insufficiently tethered to the 'public

10

issue.' " Cagle contended the affidavit "does not address the public issue of home-ownership whatsoever. It does not address the inequity that is central to the 'public issue'. It does not address nonjudicial foreclosures at large in any way. All it does is address her singular intent regarding this singular nonjudicial foreclosure sale. Accepting Defendant's [*sic*] theory would imply that all bids at all nonjudicial foreclosure sales are subject to anti-SLAPP scrutiny."

### (ii)   The Rubleviches' Supplemental Brief

For the first time, the Rubleviches contended the complaint was subject to an anti-SLAPP motion under section 425.16(e)(1) and (e)(2) because Eve's affidavit was "**an issue under '*official review*.**' "[9] The Rubleviches also reiterated their arguments under section 425.16(e)(4).

---

[9] (Code Civ. Proc., § 425.16, subd. (e) ["As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . ."].)

### D. *The Court Partially Sustains the Demurrer But Denies the Motion to Strike*

#### 1. Demurrer

The court sustained the demurrer to the first cause of action, holding there was no private right of action under section 2924m. The court overruled the demurrer as to the remaining causes of action, finding no authority for the argument "that a claim cannot survive demurrer if it is based on a statute with no private right of action but the cause of action itself is not a violation of the statute with no private right of action."

#### 2. Motion to Strike

The court denied the motion to strike, finding the Rubleviches failed to: (a) "address what element of each challenged cause of action is met by the claimed protected activity and, therefore, forms the basis for any liability"; and (b) "show any authority or persuasive argument why the filing of the affidavit pursuant to CC § 2924m (d) concerns a matter of public interest within the meaning of Section 425.16 subdivision (e)(4)" as the affidavit did not "in any way contribute[] to a public discussion regarding any 'public issue.' "

Addressing the Rubleviches' arguments under section 425.16(e)(1) and (e)(2), the court held "it would be imp[ro]per to grant the motion on the new grounds asserted after the first hearing under subdivision (e)(1) or (e)(2)" because "[n]owhere i[n] their motion or memorandum, or even reply memorandum do Defendants assert the submittal of the eligibility affidavit fits within[] subdivision (e)(1) or (e)(2)" and "the Court did not give the Defendants leave to amend the basis of their motion by way of a supplemental brief." The court also noted it was "not

12

persuaded by Defendant's [*sic*] belated argument that the submittal of the eligibility affidavit under Civil Code section 2924m is an issue under 'official review.' "  Therefore, the court did not reach the question of whether Cagle had shown a probability of prevailing.  The Rubleviches timely appealed the denial of their motion to strike.

## DISCUSSION

The Rubleviches contend the trial court erred in denying their anti-SLAPP motion because Eve's affidavit constituted protected speech under sections 425.16(e)(2) and 425.16(e)(4).  An appellate court reviews de novo whether defendants have met their burden of demonstrating that the activity from which the lawsuit arises falls within the scope of the anti-SLAPP statute's protection.  (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250.)

### A.    *The Rubleviches Forfeited Any Argument Under Section 425.16(e)(2)*

The Rubleviches do not deny they failed to raise their section 425.16(e)(2) argument in either their moving or reply papers.  Nor do they dispute the court granted them leave to file a supplemental brief to address only how the "submittal of the affidavit to the foreclosure trustee was done 'in connection with a public issue or an issue of public interest' under subdivision (e)(4)," and not to raise a new argument under section 425.16(e)(2).  The Rubleviches thus forfeited reliance on section 425.16(e)(2).  (See, e.g., *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 ["Failure to raise specific challenges in the trial court forfeits the claim on appeal.  ' " '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the

13

first time on appeal which could have been but were not presented to the trial court.' Thus, 'we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived' " ' "].)

**B.** *The Rubleviches Did Not Meet Their Burden Under Section 425.16(e)(4)*

An act is "in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" under section 425.16(e)(4) if it is a "conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(4).)

Our Supreme Court has outlined "a two-step inquiry for deciding whether the activity from which a lawsuit arises falls within section 425.16(e)(4)'s protection: first, we ask what public issue or issues the challenged activity implicates, and second, we ask whether the challenged activity contributes to public discussion of any such issue." (*Geiser v. Kuhns*, *supra*, 13 Cal.5th at p. 1243.) It is this second step that "usually plays the more prominent role in screening anti-SLAPP motions because caselaw 'demonstrate[s] that virtually always, defendants succeed in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest.' " (*Id.* at p. 1250.)

The Rubleviches contend Eve's affidavit constitutes a protected activity under section 425.16(e)(4) because it "furthers the public discourse and issues it implicates – preventing another real estate crisis – because without that affidavit, there is effectively no Civil Code 2924m. Without that affidavit there is nothing for the Attorney General, county counsel, city attorney,

14

or district attorney to review, investigate and enforce as provided for in Civil Code 2924m(j)(k)." We disagree.

Black's Law Dictionary defines "implicate" as "[t]o bring into play; to involve or affect." (Black's Law Dict. (12th ed. 2024).)[10] Cagle's complaint against the Rubleviches centers around his contention that Eve falsely attested in her affidavit that she was not acting as an agent for someone else, and that she would occupy the Property as her primary residence. The Rubleviches do not explain, and we do not see, how these statements "bring into play," "involve," or "affect" the public issue of preventing a real estate crisis. Any connection to preventing a real estate crisis is, indeed, tenuous.

Moreover, even were we to accept that Eve's allegedly false statements "implicated" the issue of preventing a real estate crisis, it certainly contributes nothing to a public discussion about the issue. Section 2924m required Eve to file an affidavit attesting that she met the statute's definition of "Prospective owner-occupant." (See Civ. Code, § 2924m, subd. (a)(1).) She did so. While the Rubleviches proclaim the affidavit "furthers the public discourse," they fail to explain how it does so.

We conclude the Rubleviches fail to show how Eve's affidavit constitutes protected activity under section 425.16(e)(4). Therefore, the court did not err in denying the Rubleviches' anti-SLAPP motion.

---

[10] Black's Law Dictionary also defines implicate as "[t]o show (a person) to be involved in (a crime, misfeasance, etc.)" and "[t]o be shown to be a cause" as in "viruses have been implicated in the spread of some cancers." (Black's Law Dict. (12th ed. 2024).)

15

## DISPOSITION

The trial court's order is affirmed.  Respondent shall recover his costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

BENDIX, Acting P. J.

WEINGART, J.

16